### BELL v. SCHOFF.
### No. 5782.

Circuit Court of Appeals, Third Circuit.

Jan. 27, 1936.

J. Webster Jones, and Wm. E. Magee Poole, both of Philadelphia, Pa., for appellant.

Frank A. Harrigan, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below, Mrs. Caroline T. Schoff, hereafter called plaintiff, brought suit and recovered a verdict against Dudley Philip Bell, hereafter called defendant, for damages sustained by her in the death of her husband, caused, she alleged, by defendant's negligence. On entry of judgment, defendant appealed, and the question involved is whether the court should have held decedent guilty of contributory negligence and given binding instructions in favor of defendant. He offered no testimony, so the question of decedent's contributory negligence depends wholly on plaintiff's proofs. They show defendant was driving his automobile, near midnight, westwardly along the Baltimore pike, a main and important thoroughfare between Philadelphia and Baltimore. Shadeland avenue, also known as Burholme road, runs into the pike on the south side of the pike, but does not continue on the north side. There were two arc lights at the intersection. While attempting to cross the pike from Shadeland avenue, the decedent was struck and killed by defendant's car. The night was clear. The car was going 35 miles an hour, a permissible speed under Pennsylvania state regulations, and was on the proper side of the pike. After the accident, defendant was arrested and before a magistrate gave testimony which was given in evidence by plaintiff. Objection was made to the admission of his testimony, but for present purposes we assume it was properly admitted. It was as follows:

"A. The night the accident happened I met Mr. Geibel in this fraternity house and we drove coming out toward Media. We came out Baltimore Pike and were driving along conversing with one another. We were coming out Baltimore Pike and after leaving Lansdowne. We were proceeding on the right hand side of the road. I saw this crossing and I slowed up.

"Q. Is there a light at that crossing? A. A blinker. There were no cars coming toward us, in back or to the right or left. I started to resume my speed, going about thirty-three miles an hour, just as I came out from under the light to enter on the bridge, I saw a figure running, coming from my left. This figure was very close to the car and at the same time I saw him I attempted to turn the car away from him to the right but couldn't on account of the pavement on the bridge so I immediately applied the brakes. At the same time he leaped in the air and he hit right on the top of the radiator and by that time the car was slowing down and we were carrying him.

"Q. How far do you suppose you carried him? A. About forty-five (45) feet.

"Q. How fast were you going? A. About thirty-five (35) miles an hour. Just as we came to a stop he toppled off. * * *

"Q. Was he running directly across the Baltimore Pike? A. Running from our left. He gave a jump and lit up on the radiator.

"Q. You had your headlights burning full? A. They were on full power."

The proof was that it was a clear night, not raining, and the roads were dry. From the intersection where the accident occurred there was a vision of 325 to 350 feet. From these proofs we can draw but one conclusion; namely, that the unfortunate decedent's lack of due care was the cause of his death. The pike was a main thoroughfare, the intersection was well lighted, the approaching car had its headlights burning, had been visible for over 300 feet from the intersection, but the car was so close that it struck the decedent before he could cross the pike. That the decedent started to run across the pike and that the car was almost upon him when he started is shown by the plaintiff's proofs: "As I came out from under a light to enter on the bridge, I saw a figure running coming from my left. The figure was very close to the car."

In the face of such proofs by the plaintiff, it was the duty of the court to find the unfortunate decedent's death was due to his lack of due care. The judgment below is reversed, and, under Baltimore & C. Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636, the record is remanded, with directions to enter judgment for the defendant n. o. v.